UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION



FILED

SEP 16 2002

CLERK'S OFFICE
U. S. DISTRICT COURT
EASTERN MICHIGAN

STELLA ROMANSKI,

    Plaintiff,

vs.

Case No: 02-CV-73358
Hon: Lawrence P. Zatkoff

DETROIT ENTERTAINMENT, L.L.C. d/b/a
MOTOR CITY CASINO, a Michigan
Corporation, MARLENE BROWN, GLORIA
BROWN, ROBERT EDWARDS, and
JOEETA STEVENSON,
Jointly and Severally,

    Defendants.
_____/

NEIL H. FINK (P 13430)
S. DAVID McNEILL (P 17544)
Attorneys for Plaintiff
185 Oakland Ave., Ste. 250
Birmingham, MI 48009
(248) 258-3181

JOHN B. FARRELL (P 27627)
ROBERT F. MacALPINE (P 31626)
Attorney for Def. Detroit Entertainment
1000 Woodbridge
Detroit, MI 48207
(313) 446-1530
_____/

## PLAINTIFF'S RESPONSE TO
## ORDER TO SHOW CAUSE

In August, 2001, plaintiff, a 75 year old grandmother and resident of Troy, Michigan, paid $9.00 to the Motor City Casino for transportation from Sterling



Heights, Michigan on a Motor City Casino bus to its facility in Detroit, Michigan. The payment also included lunch at the Casino's classic buffet.

Ms. Romanski was playing the nickel slot machines when she spotted a coin lying in the tray of one of the machines. She picked the coin up and played it at which point she was surrounded by four security officers employed by the Defendant, Motor City Casino.

One of the security officers, Defendant Marlene Brown, told Ms. Romanski she was a "police officer" and told her to come with her. She was escorted by the security officers in front of numerous casino patrons and taken to a room where she was arrested, questioned, photographed and treated like a criminal. She was required to produce her driver's license, social security card, Motor City Players card and the ticket for her lunch at the buffet. Her Motor City Players card was confiscated and she was told she could not have lunch. When Ms. Romanski indicated that she felt sick and wanted to go to the ladies room, she was escorted to the bathroom and a guard stood outside the stall while Ms. Romanski relieved herself.

She was told that she had to leave the casino and was excluded from the casino because the casino said she was "panhandling/slot walking". She was forced to wait on the street (Grand River) on one of the hottest days of the year until her bus arrived at 5:00 p.m.

Defendants admit that the Michigan State Police were "involved in the apprehension and detention of Plaintiff or Defendants premises on August 7, 2001".

2

(Exhibit A, Defendant's Answers to Plaintiff's First Set of Interrogatories, Interrogatory No. 2). Defendants further admit that Marlene Brown was "licensed by the State of Michigan with police powers" and "is able to apprehend and detain with the confines of Motor City Casino". (Id. Interrogatory Answer Nos. 12 and 13).

Ms. Romanski filed this action in the Wayne County Circuit Court on November 9, 2001. After discovery revealed the Defendants were acting "under color of law", Ms. Romanski was permitted to amend her complaint to State a cause of action under 42 U.S.C. §1983. Defendants removed the action to this Court.

The parties have been directed to show cause why Defendants conduct was "under color of law" for purposes of 42 U.S.C. §1983. Security guards and police offices employed by private entities, who have been licensed as special police officers and given police powers, maybe found to be acting under color of law. Henderson v Fisher, 631 F.2d 1115, 1118 (3rd Cir. 1980) (Exhibit B). In Henderson, campus police at the University of Pittsburgh were delegated by the Pennsylvania legislature with the same powers that the municipal police force of Pittsburgh possessed. Id. at 1118. The Court ruled that, therefore, the acts of the campus police were not private acts, but acts performed under color of state authority. Id. at 1118.

In Thompson v McCoy, 425 F.Supp 407 (1976) (Exhibit C), the Court ruled that private security guards, employed by Piggly Wiggly were acting under color of law because, although employed by a private entity, they were licensed by the State of South Carolina as security officers.

3

In this case, the Defendants, one of whom was licensed under Michigan law with police powers, admit that both they and the Michigan State Police were involved in Ms. Romanski's arrest. Marlene Brown told Ms. Romanski she was a "police officer". Moreover, the training manual of the Motor City Casino contains a section on how to avoid Section 1983 liability. (Exhibit D).

Marlene Brown is "PA 300 certified" under this provision a firm that engages a private security guard must obtain a license. MCLA 338.1053. The State Police "upon proper application and upon being satisfied that the applicant is qualified, shall issue the applicant a license to conduct business as...a private security guard...MCLA 338.1055. As part of her training, Ms. Brown attended classes at Wayne County Community College to satisfy the requirements of MCLA 338.1056(1)(g)(iii).

As a licensed private security officer, Ms. Brown has "the authority to arrest a person without a warrant...when such security police officer is on his employer's premises" MCLA 338.1080.

The constitutional rights of due process and freedom from unreasonable searches and seizures are applicable when a person is arrested or searched by a private security guard with police powers. People v Eastway, 67 Mich App 464, 241 NW2d 249 (1976).

Marlene Brown was acting under color of law because she was licensed by the State of Michigan in much the same manner as was the guard in Thompson, supra,

4

who was licensed by the State of South Carolina.  The Order to Show Cause should be dissolved.

>Respectfully submitted,
>
>Neil H. Fink, Esq., P.C.
>
>_____
>NEIL H. FINK (P 13430)
>S. DAVID McNEILL (P 17544)
>Attorneys for Plaintiff
>185 Oakland Ave., Ste. 250
>Birmingham, MI 48009
>(248) 258-3181

Dated: September 16, 2002.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED