

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

---

**STELLA ROMANSKI,**

Plaintiff,

-vs-

**DETROIT ENTERTAINMENT, L.L.C.,** d/b/a
**MotorCity Casino,** a Michigan Limited Liability
Company, **MARLENE BROWN, GLORIA
BROWN, ROBERT EDWARDS,** and
**JOETTA STEVENSON,**
jointly and severally

Defendant.

_____/

Case No. 02-CV-73358-DT-DT

Hon. Lawrence P. Zatkoff
Magistrate Steven D. Pepe

John B. Farrell  (P 27627)
Robert F. MacAlpine (P31626)
GARAN LUCOW MILLER, P.C.
1000 Woodbridge Street
Detroit, MI  48207-3192
(313) 446-1530
Attorneys for Defendants.

Neil H. Fink (P 13430)
S. David McNeill (P 17544)
Attorneys for Plaintiff

_____/

FILED

U.S. DIST. COURT CLERK
EAST. DIST. MICHIGAN
DETROIT

2003 APR -3 P 3: 19

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME Defendants, **Detroit Entertainment, L.L.C., Marlene Brown, Gloria
Brown, Robert Edwards, and Joetta Stevenson,** by and through their counsel, **GARAN LUCOW
MILLER, P.C.,** and for their Motion for Summary Judgment, states as follows:

1.     That this motion is brought pursuant to Fed.R.Civ.P 12(b)(6) and 56.

*23*

2.      That, for the reasons stated in the accompanying Brief in Support, Defendants are entitled to summary judgment of Plaintiff's second amended complaint in its entirety.

WHEREFORE, Defendants, **Detroit Entertainment, L.L.C., Marlene Brown, Gloria Brown, Robert Edwards, and Joetta Stevenson,** request that this Honorable Court grant their Motion for Summary Judgment and dismiss Plaintiff's second amended complaint against them in its entirety.

Respectfully submitted,

**GARAN LUCOW MILLER, P.C.**
Attorneys for Defendants

By: _____
John B. Farrell (P27627)
Robert F. MacAlpine (P31626)
1000 Woodbridge Street
Detroit, MI 48207-3192
(313) 446-1530

Dated:   March 6, 2003

2

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STELLA ROMANSKI,

       Plaintiff,

-vs-

**DETROIT ENTERTAINMENT, L.L.C.,** d/b/a
MotorCity Casino, a Michigan Limited Liability
Company, **MARLENE BROWN, GLORIA
BROWN, ROBERT EDWARDS** and **JOEETA
STEVENSON,** Jointly and Severally,

       Defendants.

Case No. 02-CV-73358-DT-DT

Hon. Lawrence P. Zatkoff
Magistrate Steven D. Pepe



Robert F. MacAlpine (P 31626)
John B. Farrell (P 27627)
GARAN LUCOW MILLER, P.C.
1000 Woodbridge Street
Detroit, MI 48207-3192
(313) 446-1530
Attorneys for Defendants

Neil H. Fink (P 13430)
S. David McNeill (P 17544)
Attorneys for Plaintiff

## PROOF OF SERVICE

    Dawn Apfel certifies that on April 3, 2003, a copy of Defendants' Motion for
Summary Judgment was served upon the attorneys of record of all parties at their
respective address as disclosed by the pleadings of record herein. I declare under penalty
of perjury that the statement above is true to the best of my knowledge, information and
belief:

By:      ___✓___   U.S. Mail     _____     Facsimile

       _____   Hand Delivered     _____     Overnight Service

                               DAWN APFEL



OTS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

_____

**STELLA ROMANSKI,**

Plaintiff,

-vs-

Case No. 02-CV-73358-DT-DT

Hon. Lawrence P. Zatkoff
Magistrate Steven D. Pepe

**DETROIT ENTERTAINMENT, L.L.C.,** d/b/a
**MotorCity Casino,** a Michigan Limited Liability
Company, **MARLENE BROWN, GLORIA
BROWN, ROBERT EDWARDS,** and
**JOETTA STEVENSON,**
jointly and severally

Defendant.

_____/

John B. Farrell  (P 27627)
Robert F. MacAlpine (P31626)
GARAN LUCOW MILLER, P.C.
1000 Woodbridge Street
Detroit, MI 48207-3192
(313) 446-1530
Attorneys for Defendants.

Neil H. Fink (P 13430)
S. David McNeill (P 17544)
Attorneys for Plaintiff

_____/



FILED
2003 APR -3 P 3 19
U.S. DIST. COURT CLERK
EAST. DIST. MICHIGAN
DETROIT

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### Facts

In August 2001, Plaintiff, Stella Romanski, along with three friends, purchased a buffet lunch

and a bus ride to and from the MotorCity Casino from a tour company.  While walking around the

1

nickel slot area of MotorCity Casino, Plaintiff took a nickel token in the slot tray of a slot machine which she was not playing. Plaintiff admits picking up the token out of the tray and attempting to play it in another slot machine. **Exhibit A**, deposition of Plaintiff, pages 11-12, 14.

Pursuant to MCL §432.218 Sec. 18(2)(j) of the Michigan Gaming Control and Revenue Act, Plaintiff's action in taking the nickel token out of the tray which she was not playing and attempting to play it in another machine is prohibited conduct and a felony:

> 432.218    **Prohibited conduct; violation as felony; violation as misdemeanor; penalties; presumptions; venue.**
> ***
> (2) A person commits a felony punishable by imprisonment for not more than 10 years or a fine of not more than $100,000, or both, and, in addition, shall be barred for life from a gambling operation under the jurisdiction of the board if the person does any of the following:
> ***
> (j)    Claims, collects, takes, or attempts to claim, collect or take money or anything of value in or from the gambling games, with intent to defraud, without having made a wager contingent on winning a gambling game, or claims, collects, or takes an amount of money or thing of value of greater value than the amount won.

Defendant, Marlene Brown, an undercover security officer employed by Defendant Detroit Entertainment, L.L.C., witnessed Plaintiff take the token from the tray and attempt to play it in another machine. Ms. Brown approached Plaintiff and tried to explain to Plaintiff that her conduct was prohibited by law and by the casino. Maintaining that the token was hers to play, Plaintiff began to argue with Ms. Brown. Ms. Brown called two other undercover security officers, Defendants Gloria Brown and Robert Edwards, to assist her as these officers were more experienced. As the argument continued, Plaintiff maintained that she could use a token she found in a slot machine. Ms. Brown explained to Plaintiff that taking a token from a machine constituted larceny, however, had

Plaintiff found the token on the floor, it would be hers to use. **Exhibit B**, deposition of Marlene Brown pages 50-60, 62-65.

Determining that Plaintiff was becoming more upset and argumentative, the officers asked Plaintiff to accompany them to the security office to further discuss and explain the situation. Ms. Brown testified that she wanted to avoid a scene on the floor of the casino and that Plaintiff's conduct, while not drawing a crowd, had the potential to become disruptive. **Exhibit B**, pages 65-66. There is no dispute that, while escorting Plaintiff to the security office, none of the officers touched or handcuffed Plaintiff. Upon arriving at the security office, Defendant Joetta Stevenson, security supervisor for the casino, also attempted to explain to Plaintiff that her conduct in taking the token from the slot tray was prohibited under law. At no time was Plaintiff searched or patted down. Plaintiff remained upset and ultimately, Ms. Stevenson made the decision to "86" or ban Plaintiff from the casino for a period of six months. Ms. Stevenson requested Plaintiff to produce her driver's license and player's advantage card. A copy was made of Plaintiff's driver's license and her photo was taken. Plaintiff's player's advantage card was confiscated as a result of being banned from the casino. **Exhibit C**, deposition of Joetta Stevenson, pages 44-48, 55-58.

Defendants escorted Plaintiff to the air conditioned valet lobby, located on the first floor of the casino, where she could wait for her friends. Of her own volition, Plaintiff left the lobby and went outside to look and/or wait for her bus. **Exhibit A**, page 19-20. Eventually, Plaintiff's companions learned of Plaintiff's eviction from the casino and joined her outside of the casino. At some point shortly thereafter, Plaintiff and her friends encountered the individual Defendants again and entered into a heated discussion regarding Plaintiff's eviction from the casino. Ms. Brown and Ms. Stevenson testified that Plaintiff's companions called Ms. Brown "stupid". **Exhibit B**, pages

3

79-81. **Exhibit C**, pages 69-70. However, Plaintiff testified that her companion referred to the situation, not Ms. Brown, as "stupid". **Exhibit A**, page 22.

On November 9, 2001, Plaintiff originally brought suit in Wayne County Circuit Court against MotorCity Casino, Jane Doe and Mary Roe, alleging false arrest and imprisonment, defamation, intentional infliction of emotional distress and exemplary damages. On November 29, 2001, Plaintiff amended her complaint to correctly identify the defendant as Detroit Entertainment, L.L.C., d/b/a MotorCity Casino. On July 11, 2002, Plaintiff filed her second amended complaint, naming Marlene Brown, Joetta Stevenson, Gloria Brown and Robert Edwards, and adding a claim under 42 U.S.C. §1983. **Exhibit D**, Second Amended Complaint. Defendants removed the action to this court. On September 4, 2002, this court issued an Order to Show Cause as to whether Defendants' conduct was "under color of law" for purposes on 42 U.S.C. §1983. After written submissions by all parties, this court entered an order on September 19, 2002 holding that this court could exercise jurisdiction in this case since it appeared that Defendants were acting under color of law because they have police authority and are highly regulated by the state.

## Standard of Review

The standard of determining whether Summary Judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submissions to a jury or whether it is so one-sided that one party must prevail as a matter of law." See *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 - 52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must consider the evidence in the light most favorable to the non-moving party, but may weigh competing inferences for their persuasiveness. *Id.* Once the moving party shows that "there is an absence of evidence to support the non-moving

4

party's case," the non-moving party has the burden of coming forward with evidence raising triable issues of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A.     **Count I - False Arrest/False Imprisonment**

In Count I of her second amended complaint, Plaintiff alleges that she was "wrongfully accused by the Defendants of stealing casino property" and that she was detained, interrogated, accused of being a criminal, stripped of her property, escorted out of the casino and forced to wait in hot weather for several hours. These allegations form the basis of her claim for false arrest and imprisonment. **Exhibit D.**

A false arrest is an illegal or unjustified arrest. *Lewis v. Farmer Jack Division, Inc.*, 415 Mich. 212, 218, 327 N.W.2d 893 (1982). The innocence of the person arrested is not an element of the tort of false arrest. *Id.* An action for false arrest cannot be maintained where the arrest is legal, even if the person arrested is in fact innocent. If the arrest is legal, there has not been a false arrest. *Id.* To succeed on the claim of false imprisonment, Plaintiff must establish that (1) Defendants intended to confine her; (2) she was actually confined as either a direct or indirect result of Defendants' actions; and (3) she was actually conscious or aware of her confinement. *Moore v. City of Detroit*, 252 Mich.App 384, 387, 652 N.W.2d 688 (2002). "'[T]he essence of a claim of false imprisonment is that the imprisonment is false, *i.e.*, without right or authority to do so.'" *Id.* at 388, quoting *Hess v. Wolverine Lake*, 32 Mich.App. 601, 604, 189 N.W.2d 42 (1971).

Claims of false arrest or imprisonment require the plaintiff to prove that the arrest lacked probable cause. *Burns v. Olde Discount Corp.* 212 Mich.App. 576, 581, 538 N.W.2d 686 (1995). Where the facts are undisputed, the determination whether probable cause exists is a question of law for the court to decide. *Hall v. Pizza Hut of America, Inc.*, 153 Mich.App. 609, 615, 396 N.W.2d

5

809 (1986). Probable cause that a particular person has committed a crime is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person to believe that the accused is guilty of the offense. *People v. Coutu*, 235 Mich.App. 695, 708, 599 N.W.2d 556 (1999).

Where a private security officer has been certified under the Private Security Guard Act of 1968, PA330, MCL 338.1051 *et. seq.*, that security officer has the authority to make arrests of a person without warrant when that officer is on the employer's premises during her hours of employment as a private security officer and does not extend beyond the boundaries of the property of the employer. The Act also requires the private security officer to be in full uniform of the employer. Under certain circumstances, a private security officer is akin to a peace officer. *Op Atty Gen* 1977, No. 5126, p 105. Pursuant to M.C.L. §764.15, a peace officer, without a warrant, may arrest a person, if a misdemeanor or ordinance violation has been committed in his/her presence, or if the peace officer has reasonable cause to believe a misdemeanor has been committed, and has reasonable cause to believe the person to be arrested has committed it.

In the present case, the facts clearly show that Plaintiff was gaming at Defendant's Casino, and that she admittedly took a token from a slot machine which she was not playing and attempted to play it in another machine:

> Q: When you walked around the post – – let me get to the heart of it. Ma'am, did you or did you not pick up a nickel from one of the slot machine trays?
> A: No, I didn't. I picked up a coin.
> Q: What was the coin?
> A: Nickel coin. It was laying in the tray. I didn't remember at the time, but the more I thought about it, I picked up a nickel coin in a tray.
> Q: What did you do with it?
> A: I went around to the machine that I was playing right along and I put $20 in and the nickel coin.

***

Q:    It's my understanding just to clarify that today you acknowledge that you probably did pick up the coin and play it, is that correct?

A:    Uh-huh. Yes. Sorry.

**Exhibit A,** pages 11-12, 14. This conduct constitutes a violation of 432.218 Sec. 18(2)(j) of the Michigan Gaming Control and Revenue Act. Accordingly, Defendant's security officers clearly had probable cause with which to detain the Plaintiff. Plaintiff's actions, which were all readily witnessed by security personnel, certainly presented casino security with circumstances sufficiently strong in themselves to warrant a cautious person to believe Plaintiff had violated the law. As Plaintiff's actions constituted a felony under the statute, Defendants had the authority to detain her under the private citizen arrest statute, MCL §764.16. In further justification for detaining Plaintiff, the Defendant security officers were certified under the strictures of Public Act 330. Therefore, even if Plaintiff's actions constituted a misdemeanor, according to MCLA §338.1080, the Defendant officers had the authority to detain her.

As Defendants had the legal authority detain Plaintiff and also had probable cause to do so, given that she admittedly violated gaming regulations, Defendants cannot be liable for false arrest or false imprisonment. Accordingly, Defendants are entitled to summary judgment of Count I of Plaintiff's second amended complaint.

**B.    Count II - Defamation**

In Count II of her second amended complaint, Plaintiff alleges that Defendants are liable in defamation for having "made false, malicious and defamatory accusations about Plaintiff, accusing her of committing a crime, to wit stealing Defendant's property." Plaintiff claims to have suffered injury to her reputation and public disgrace as a result. **Exhibit D.**

7

To sustain a claim of defamation, the following must be proven: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication of the statement to a third party; (3) a minimum of negligence on the part of the defendant publisher; and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the defendant publisher. *Linebaugh v. Sheraton Michigan Corp.*, 198 Mich.App 335, 338, 497 N.W.2d 585 (1993). All of these elements must be specifically plead. *Gonyea v. Motor Parts Federal Credit Union*, 192 Mich. App 74, 77; 480 NW2d 297 (1991).

Plaintiff's defamation claim must fail for numerous reasons. First, Plaintiff has failed to specifically plead the requisite elements of a claim of defamation. Plaintiff's complaint merely alleges that Defendants "made false, malicious and defamatory accusations about Plaintiff, accusing her of committing a crime, to wit stealing Defendant's [sic] property" and that these statements have injured Plaintiff's "good reputation" and brought her into "public disgrace". Plaintiff's complaint fails to identify what allegedly defamatory words were used by Defendants, the connection between the allegedly defamatory words and Plaintiff and where, when or how these allegedly defamatory words were published. As such, Plaintiff has failed to state a claim upon which relief may be granted. See *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 197 Mich.App. 48, 495 N.W.2d 392 (1993) (claim of defamation must be specifically plead).

Second, Plaintiff's defamation claim must fail as Defendants' allegedly defamatory statements, that Plaintiff stole from the casino, is not false as Plaintiff admitted in her deposition that she took the nickel from the slot tray. **Exhibit A**, pages 11-12, 14. As Plaintiff has admitted that she took the token, and the taking of a token out of a tray is against 432.218 Sec. 18(2)(j) of the Michigan Gaming Control and Revenue Act, the statement that Plaintiff took currency which did not

8

belong to her was accurate. As such, Defendants cannot be held liable for defamation for a statement which is not false. See *Rouch v. Enquirer & News of Battle Creek, Michigan*, 440 Mich. 238, 487 N.W.2d 205 (1992) (claim of defamation fails when allegedly defamatory statement is not materially false).

Third, Plaintiff's defamation claim must fail as she has not alleged, nor can she prove, that Defendants published the allegedly defamatory statements. Plaintiff has not identified to whom or how exactly Defendants communicated the allegedly defamatory accusation. As such, Plaintiff has failed to prove one of the requisite elements of her claim and Defendants cannot be held liable for defamation. In fact, the only person who publicized the details of the incident was Plaintiff herself, by admittedly marketing her situation to various news media. **Exhibit A**, pages 26-27. Defendants cannot be held liable under a theory of compelled self-defamation as they clearly did not compel Plaintiff to release to the media the details of the August 7, 2000 incident. See, *Grist v. Upjohn Co.*, 16 Mich. App 452, 168 N.W.2d 389 (1969).

To the extent that Plaintiff's complaint could be construed to allege that publication resulted from other casino patrons witnessing or hearing Plaintiff's encounter with Defendants on the floor of the casino, Defendant Marlene Brown's testimony refutes this:

Q:  Now when you were down at the machines before you escorted Stella back to the security office, you said there were patrons in the area?
A:  Yes.
Q:  Do you remember them reacting at all to the incident?
A:  No.
Q:  I mean, was there yelling or screaming?
A:  No.
Q:  Was Stella raising her voice to call attention to the incident?
A:  After a while, yes, she did start.
Q:  Well, did the other patrons come around to see what was going on?
A:  No. People are going to look, but they wasn't coming up to her or nothing.
Q:  Did you talk to any of the patrons at that time?

A:     No.
Q:     Did you have to calm any of them down?
A:     No.

**Exhibit B**, pages 96-97. Plaintiff has not offered any evidence which could support an assertion that

other casino patrons witnessed or heard Defendants' allegedly defamatory statements.  In fact, it

appears that it was Plaintiff's conduct in becoming loud, upset and defiant that would have provoked

any attention on the floor, a situation which Ms. Brown wanted to avoid.  **Exhibit B**, pages 64-67.

Accordingly, Plaintiff cannot sustain her claim of defamation against Defendants.

To the extent that Plaintiff has alleged Defendants "published" the allegedly defamatory

statements by telling Plaintiff's friends about the incident, this too is without merit.  Deposition

testimony clearly evidences that Plaintiff herself informed her friends of the details of her detainment

and subsequent eviction.  **Exhibit A**, pages 20-21.  Defendants did not "publish" any defamatory

statements to anyone and therefore cannot be held liable for defamation.

Finally, to the extent that Plaintiff's claim can be construed to allege that Defendants

"published" defamatory information by reporting the incident to the MSGC or the State Police, such

a statement was subject to a qualified privilege and Plaintiff has failed to prove malice on the part

of Defendants sufficient to defeat the privilege.  In *Prysak v. R.L. Polk Co.*, 193 Mich.App. 1, 483

N.W.2d 629 (1992), the Michigan Court of Appeals outlined the elements of a qualified privilege:

> The determination of whether a privilege exists is one of law for the court.  The
> elements of a qualified privilege are (1) good faith, (2) an interest to be upheld, (3)
> a statement limited in its scope to this purpose, (4) a proper occasion, and (5)
> publication in a proper manner and to proper parties only.  A plaintiff may overcome
> a qualified privilege only by showing that the statement was made with actual malice,
> i.e., with knowledge of its falsity or reckless disregard for its truth.  General
> allegations of malice are insufficient to establish a genuine issue of material fact.

*Id.* at 14-15 (citations omitted). To prove actual malice, sufficient to overcome the qualified privilege, Plaintiff must prove, by clear and convincing evidence, that Defendants possessed actual knowledge that the published statement was false or that Defendants in fact entertained serious doubts as to the truth of the statement. *Ireland v. Edwards*, 230 Mich.App 607, 622, 584 N.W.2d 632 (1998), citing *Grebner v. Runyon*, 132 Mich.App 327, 347 N.W.2d 741 (1984). Plaintiff has not plead, nor can she prove, that Defendants acted with actual malice. Testimony in this case evidences that Plaintiff admitted to taking the token, Ms. Brown witnessed the incident and had probable cause to detain Plaintiff in the manner she did. Any alleged defamatory statement was not false and, to the extent, that Defendants communicated the statement to police or regulatory authority, such communication was privileged.

In sum, Plaintiff has failed to establish a claim of defamation under Michigan law and Defendants are entitled to summary judgment of Count II of her second amended complaint.

## C.      Count III - Intentional Infliction of Emotional Distress

Plaintiff's third claim alleges that Defendants' actions in detaining and eventually banning her was extreme and outrageous and caused Plaintiff to suffer embarrassment, humiliation, fear and emotional distress. To establish a valid claim of intentional infliction of emotional distress (IIED), Plaintiff must prove: (a) extreme and outrageous conduct; (b) intent or recklessness; (c) causation; **and** (d) severe emotional distress. *Graham v. Ford*, 237 Mich.App. 670; 604 N.W.2d 713 (1999). Liability for this claim requires that the conduct be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society. *Doe v. Mills*, 212 Mich.App. 73; 536 N.W.2d 824 (1995). Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other

11

trivialities. *Id.* Hence, a plaintiff will only be able to recover for intentional infliction of emotional distress "in the most egregious of cases." *Bonelli v. Volkswagen of America, Inc.*, 166 Mich.App. 483; 421 N.W.2d 213 (1988).

In Michigan, the question of whether the intentional infliction of emotional distress gives rise to a recognized cause of action in tort remains unanswered. The leading Michigan Supreme Court case, *Roberts v. Auto-Owners Insurance Company*, 422 Mich. 594; 374 N.W.2d 905 (1985), discusses the issue in the context of a breach of contract action. There, the Court referred to *Kewin v. Massachusetts Mutual Life Ins. Co.*, 409 Mich. 401; 295 N.W.2d 50 (1980), another breach of contract case, where the Court stated that they "express no opinion on the accuracy of the Court of Appeals observation that Michigan recognizes a tort action for the intentional infliction of emotional distress." *Id.* The *Roberts* court stated that the tort theory of IIED has been recognized elsewhere to permit recovery of mental distress damages separate and apart from the recovery of contractual damages for breach of an insurance policy. The Michigan Supreme Court noted that the theory of IIED had gained widespread acceptance in a variety of factual contexts in the courts of other states, but the *Roberts* court refused to formally adopt the tort in that case. To date, the Michigan Supreme Court has not ruled on the issue of whether a separate cause of action exists for IIED.

In *Eaton Pine Village v. Jackson*, unpublished per curiam opinion of the Court of Appeals, (No. 224572, June 21, 2002), attached hereto as **Exhibit E**, the Michigan Court of Appeals provided a thorough history of Michigan case law regarding recognition of the tort of IIED. The *Jackson* Court reiterated that the Michigan Supreme Court has "consistently avoided recognizing that intentional infliction of emotional distress exists as a cause of action", in part because the Court has rarely been faced with a factual situation involving conduct so outrageous and reckless to warrant

12

the court addressing whether the tort exists. *Id*, citing *Kewin, supra, Roberts, supra*, and *Smith v. Calvary Christian Church*, 462 Mich. 679; 614 N.W.2d 590 (2000). In contrast, the *Jackson* Court noted, the Court of Appeals has "addressed the tort of intentional infliction of emotional distress almost from the first days following this Court's creation." *Id*. While recognizing that some panels of the Court of Appeals have followed the Supreme Court's lead in disposing of a case based on the adequacy of the evidence, or lack thereof, the *Jackson* Court noted that a number of panels have in fact recognized the tort as a viable cause of action in Michigan. *Id*, citing *Bhama v. Bhama*, 169 Mich.App. 73; 425 N.W.2d 733 (1988) and *Haverbush v. Powelson*, 217 Mich.App. 228; 551 N.W.2d 206 (1996). However, in conclusion of its analysis of the history of IIED in Michigan jurisprudence, the *Jackson* Court felt constrained to "not enter the fray", leaving it to the Supreme Court to determine whether the tort exists.[1]

Assuming, as the *Jackson* Court did, that the tort of IIED is a viable cause of action in Michigan, the test for determining whether conduct is sufficiently unreasonable as to be regarded as extreme and outrageous is whether a recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" *Graham, supra*. "The severity of emotional distress may be evidenced by fright, horror, grief, shame, worry and nausea, but the law will intervene only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Haverbush, supra* at 235.

Plaintiff's IIED claim must fail as she cannot prove the requisite elements of this cause of action. Defendants' legally authorized conduct in briefly detaining Plaintiff and banning her from

---

[1]However, it should be noted that, although bound by prior precedent which recognized the existence of the tort, the *Jackson* Court questioned "[t]he wisdom of recognizing yet another cause of action, when adequate remedies at law exist". *Id*.

the casino were not outrageous, extreme or atrocious so as to impose tort liability on Defendants. See *Bellamy v. Target Stores*, unpublished per curiam opinion of the Court of Appeals (No. 235334, November 19, 2002) (No claim for IIED made where store employees with right to detain suspected shoplifter accused patron of stealing merchandise) (attached as **Exhibit F**). Defendants acted professionally and within their authority and cannot be held liable for IIED in this case. In addition, Plaintiff has not offered any evidence which would suggest that Defendants intended to cause her to suffer emotional distress. To the contrary, the undisputed testimony evidences that the officers were merely doing their job. Finally, Plaintiff cannot prove that she suffered the requisite severe emotional distress. Plaintiff admits that she has not sought medical treatment for any condition as a result of the incident nor has she taken any kind of medication as a result of the incident. **Exhibit A**, page 25. While Plaintiff is not required to have sought medical treatment as a result of Defendants' alleged conduct, she must offer evidence of more than mere indignity, embarrassment or humiliation. *McCahill v. Commercial Union Ins. Co.*, 179 Mich.App. 761, 446 N.W.2d 579 (1989). Plaintiff's deposition testimony evidences only that she was merely embarrassed as a result of her detention and expulsion by Defendants. **Exhibit A**, page 25. Plaintiff's testimony is not sufficient to prove emotional distress damages as a matter of law and Defendants are entitled to summary judgment of Plaintiff's IIED claim.

To the extent that Count III can be construed to include as outrageous conduct, the allegedly defamatory statements alleged in Count II, such a claim is without merit. As the Michigan Court of Appeals noted in *Ireland, supra*, the truth of Defendants' statements regarding Plaintiff's admitted larceny protects Defendants from liability for IIED under the First Amendment. *Id.* at 640-641,

citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988).

Defendants are entitled to summary judgment of Count III of Plaintiff's second amended

complaint as Plaintiff has failed to establish the requisite elements of IIED.

**D.      Count IV - Exemplary Damages**

In Count IV of her complaint, Plaintiff alleges that she is entitled to exemplary damages

because Defendants' conduct was so "odious, perverse and outrageous." Defendants are entitled to

summary judgment of this count as Plaintiff has failed to state a cause of action recognized by

Michigan law:

> Exemplary damages fall within the larger category of actual damages, *Ray v City of
> Detroit, Dep't of Street Railways*, 67 Mich.App. 702, 704; 242 N.W.2d 494 (1976),
> and are not a separate cause of action.

*Johnson v. Villa Elizabeth-Butterworth, Inc.*, 2002 WL 31117019 (Mich. App. 2002) (attached as

**Exhibit G**). As Plaintiff's substantive claims fail, for the reasons detailed in this brief, she is not

entitled to actual damages, let alone exemplary damages, and Count IV should be dismissed.

**E.      Count V - 42 U.S.C. §1983**

Plaintiff's final claim alleges that Defendants are liable under 42 U.S.C. §1983 for depriving

her of her constitutional right to not be subjected to an unreasonable search and seizure under the

Fourth and Fourteenth Amendments to the Constitution. For the reasons below, Plaintiff's final

claim is also without merit.

## I.    Defendants were not acting under color of state law.

In an order dated September 19, 2002, this court determined that it had jurisdiction over Plaintiff's §1983 claim as Defendant Marlene Brown was acting under color of state law.[2]  The question of state action or color of law is necessarily fact-bound.  *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 121 S.Ct. 924, 932, 148 L.Ed.2d 807 (2001).  "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance."  *Burton v. Wilmington Parking Authority*, 365 U.S.715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).  Defendants respectfully suggest that reexamination of the facts in this case, in light of applicable case law, is warranted at this time.

Challenged conduct which constitutes state action also constitutes action under "color of law" for purposes of §1983.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).  The Supreme Court has articulated three bases for establishing state action: (1) the symbiotic relationship or nexus test:  the state and the private actor maintain a sufficiently interdependent or symbiotic relationship; (2) the state compulsion test: the state requires, encourages or is significantly involved in the private conduct; or (3) the public function test:  the private actor exercises a traditional state function.  *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).  Extensive state regulation of a private entity is not sufficient to render that entity's conduct state action.  *Jackson v.*

---

[2]This Court has the authority to review, in the context of this motion, it's initial jurisdictional determination regarding the existence of state action.  Fed.R.Civ.P. 12(h)(3) provides that a court *shall* dismiss a matter for lack of subject matter jurisdiction "whenever it appears by suggestion of the parties or otherwise."  Fed.R.Civ.P. 12(h)(3) (emphasis added).  In addition, no legal or judicial doctrine prevents this Court from now reexamining this issue.  See *Ramirez v. Brooklyn Aids Task Force*, 175 F.R.D. 423 (E.D.N.Y. 1997) (Res judicata does not bar subsequent review of state action issue if initial review was based on jurisdictional determination which did not constitute an adjudication on the merits.).  See also *Amen v. City of Dearborn*, 718 F.2d 789, 793-794 (6th Cir. 1983) (Law of the case doctrine does not bar reexamination of subject matter jurisdiction).

*Metropolitan Edison Co.*, 419 U.S. 345, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Conduct which satisfies any one of these tests is sufficient to constitute state action and color of law.

At issue in the present case is whether the individual Defendant officers were acting under color of law when they detained Plaintiff. This court determined that the individual officers in this case acted under color of law based on the fact that the individual officers were PA 330 certified, they were regulated by the state and they exercised traditional state functions typically reserved to state police officers. However, a very recent opinion of the Sixth Circuit Court of Appeals has held that the public function test is to be interpreted narrowly and cannot establish the basis for state action in a case involving a private security guard. See *Chapman v. The Higbee Co.*, *on rehearing en banc*, __ F.3d __ (6th Cir. 2003) (attached as **Exhibit H**). "[T]he mere fact that the performance of private security functions may entail the investigation of a crime does not transform the actions of a private security officer into state action." *Id.*, citing *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1457 (10th Cir.); *White v. Scrivner Corp.*, 594 F.2d 140, 142-143 (5th Cir. 1979). Accordingly, Defendants respectfully suggest that this Court's initial jurisdictional determination that Defendants acted under color of law based on the fact that they were exercising the traditional state function typically reserved to state police officers was in error or should not preclude a contrary determination on this motion for summary judgment.

Defendants argue that, even when analyzed under the two remaining Supreme Court tests of state action, their actions were not under color of law. State action does not exist in this case under the state compulsion test as the state did not require or encourage the Defendants conduct in detaining Plaintiff. See e.g. *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (State action found where private party was significantly assisted by court in

17

exercising party's peremptory challenges to exclude jurors on account of race). Under the final remaining test, the symbiotic relationship or nexus test, state action may be found in factual situations where "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson, supra* at 351. With particular respect to cases involving private security officers, state action may be established when a private security officer purports to exercise official police authority or acts under pretense of law. *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). State action may also exist where there has been established a plan between the police and the secured establishment whereby the police make an arrest based solely on the actions and observations of the private security officers. See *Smith v. Brookshire Bros.*, 519 F.2d 93 (5th Cir. 1975). However, where the private security officers merely detain a suspect and police make the decision to arrest based on their own investigation, no state action is found. *Cruz v. Donnelly*, 727 F.2d 79 (3rd Cir. 1984). See also *White, supra.* In sum, a private security officer who actually acts with police authority acts under color of law for purposes of §1983. In contrast, a private security officer whose contested action was not taken under actual or apparent police authority, regardless of whether that officer possessed the ability to so act, cannot be considered to have acted under color of state law.

The Sixth Circuit Court of Appeals' recent decision in *Chapman, supra* is relevant to an analysis of state action in the instant case. In *Chapman, supra*, the plaintiff, an African-American woman, brought an action under both 42 U.S.C. §1981 and §1983 against the defendant retailer, alleging that her constitutional rights were violated when a security officer stopped and searched her due to a suspicion of shoplifting. The plaintiff, while shopping at the defendant's store, chose some

18

clothing and entered into a fitting room to try on her selections.  Upon entering the fitting room, Ms. Chapman noticed a sensor tag on the floor which had apparently been left by a previous patron.  Ms. Chapman decided not to purchase any clothing and left the fitting room to return the clothes to the rack.  A sales assistant employed by the defendant noticed the sensor tag on the floor of the fitting room which Ms. Chapman had just exited and notified a security officer.  The security officer was employed by the defendant department store but was also an off-duty sheriff's deputy who was wearing his official sheriff's department uniform, badge and sidearm.  The defendant department store employed a security policy whereby stip-searching was prohibited and, in a situation necessitating a strip-search, security officers were instructed to call the police.  The security officer stopped Ms. Chapman and asked her to return to the fitting room where the officer and a female manager searched Ms. Chapman's purse.  The officer and manager determined that it was necessary to check Ms. Chapman's clothes and instructed her to remove her coat and suit jacket and lift up her shirt.  Finding no merchandise on Ms. Chapman's person, the security officer apologized to her and Ms. Chapman left the store.

Ms. Chapman filed suit in the Northern District of Ohio and a magistrate granted summary judgment in favor of the defendant.  The district court held that the plaintiff could not maintain her claim under §1981 as the clause does not apply to private action and she could not maintain her §1983 claim as the security officer was not acting under color of law. Ms. Chapman appealed and the Court of Appeals for the Sixth Circuit affirmed the district court's decision.  *Chapman v. The Higbee Co.*, 256 F.3d 416 (6th Cir. 2001).  After rehearing *en banc*, the Sixth Circuit reversed its previous decision, holding that §1981 provides a cause of action against a private party and a genuine

issue of material fact existed as to whether the security guard was acting under color of law for purposes of the plaintiff's §1983 claim.

With respect to Ms. Chapman's §1983 claim, relevant to the instant case, the Sixth Circuit on rehearing first determined that state action could not be based on the public function test as that test is narrowly interpreted and applicable only to functions such as holding elections, exercising eminent domain and operating a company-owned town. Turning to the symbiotic relationship or nexus test, the court determined that a genuine issue of material fact existed as to whether the security guard's actions were under color of law. Specifically, the court emphasized the fact that the security guard exercised an action which was specifically reserved for police authorities: strip-searching a suspected shop-lifter. The court also determined that the officer's uniform, badge and sidearm may have induced Ms. Chapman into believing that she was not free to leave, thereby rendering the detention a tacit arrest, attributable to the state. Importantly, the court did not focus its analysis on whether the security officer had the *ability* to exercise police-like authority (which he clearly did, given the fact that he was a sheriff's deputy). Rather, the court's analysis centered on what action the security officer did actually exercise, namely strip-searching (reserved to police authority) and using a uniform and badge to effect an arrest (reserved to police authority).

The Michigan Supreme Court's decision in *City of Grand Rapids v. Impens*, 414 Mich. 667, 327 N.W.2d 278 (1982) is also relevant to the issue of state action in this case. *Impens* was a criminal case in which the defendant was convicted of disorderly conduct arising out of a shoplifting incident. The defendant, while walking though a Grand Rapids Meijer store, was observed by an off-duty deputy sheriff and a store detective shoplifting musical tapes. The sheriff and detective stopped the defendant and his two companions and brought them to the store's security office, where

they were joined by a third security officer. The officers searched the three men and discovered tapes and other goods. The officers elicited information from the defendant sufficient to fill out a form entitled "Loss Prevention Department Voluntary Statement." The defendant read the statement and signed it. The Grand Rapids police were called and issued appearance tickets to the defendant and his companions. In total, the defendant had been detained for approximately fifteen minutes.

Prior to trial on the criminal charge, the defendant moved to suppress the content of his sworn statement, elicited by the security officers. The defendant argued that he was not advised of his rights prior to giving the statement and, therefore, the statement was inadmissible against him under the Fourth Amendment and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The district court denied the defendant's request to suppress the statement and the defendant was convicted of the criminal charge. The circuit court upheld the conviction and the Court of Appeals denied the defendant's application for leave to appeal. The Supreme Court granted leave to appeal.

The Supreme Court began its analysis by reiterating that the constitutional protections of the Fourth Amendment apply to governmental action only and a person who is not a police officer, or acting in concert with a police officer, is not required to give *Miranda* warnings. *Id.* at 673, quoting *People v. Omell*, 15 Mich.App. 154, 157, 166 N.W.2d 279 (1968). Citing the Court of Appeals decision in *People v. Holloway*, 82 Mich.App. 629, 633, 267 N.W.2d 454 (1978), the court gave the following reasoning for applying the strictures of the Fourth Amendment only to governmental actors:

> 'An individual has the right to redress any wrongs which may have been committed by private citizens, be they security guards or not. They can bring civil actions or file criminal complaints against the alleged offenders. It is because the cloak of

21

sovereign immunity is wrapped around law enforcement officials that the Fourth
Amendment is applied to their actions (though today a somewhat ragged cloak).'

*Id.* at 673-674. Based on this reasoning, the court determined that the defendant's statement could

only be excluded if there was sufficient state action.

The court recognized that some decisions have held that state action exists where private

security guards receive direct assistance from or work closely with actual police officers.  *Id.*

However, the court concluded that, in the case before it, the actions of the security officers and the

city police did not demonstrate the coordinated effort necessary to constitute state action:

> The Meijer security personnel were working with the view of furthering their
> employer's interest only; they were not acting as police agents.  Their role may be
> viewed as an extension of the commonlaw shopkeepers' privilege to detain for a
> reasonable period of time a person suspected of theft or failure to pay.  See *People
> v. Raitano*, 81 Ill.App.3d 373, 36 Ill.Dec. 597, 401 N.E.2d 278 (1980).  There was
> no complicity with the police department or any indication that their acts were
> instigated or motivated by the police.

*Id.* at 675.

The defendant further argued that state action existed based on the fact that the security

officers were qualified as law enforcement officials, pursuant to MCL §338.1051, *et. seq.*  The court

rejected this argument:

> [D]efendant believes that the licensing statutes which regulate private security guards
> demonstrate the requisite degree of state action to bring their activities under color
> of state law, subject to constitutional restraints.  See M.C.L. §338.1051 *et seq*;
> M.S.A. §18.185(1) *et seq*.  We disagree.  We do not believe that the mere licensing
> of security guards constitutes sufficient government involvement to require the giving
> of *Miranda* warnings.

*Id.* at 676. The court concluded that no state action existed as the security officers, regardless of their

state certification, did nothing more than legally detain the defendant for a reasonable period of time.

As the security officers were not state actors, the defendant's voluntary statement need not have been

22

preceded by *Miranda* warnings and was not subject to exclusion under the Fourth Amendment. *Id.* at 677-678.

Based on the case law, cited above, Defendants argue that there was no state action in the instant case and the individual officers involved did not act under color of state law. In contrast to the security officer in *Chapman, supra,* none of the individual defendants were in uniform or carried a weapon. While the officers did have handcuffs, they were never employed, or threatened to be employed, on Plaintiff. The undisputed testimony evidences that the Defendant officers merely detained Plaintiff for the purpose of explaining to her the relevant gaming regulation which she had violated. Defendants did not place Plaintiff under arrest. They did not exercise any authority which was reserved to the police in this case. While the individual Defendants were authorized under PA330 to effect an arrest and exert limited police-like authority, there is absolutely no evidence that they did so in this case. Detaining a patron is not an action reserved to police authority. *White, supra.* None of the individual Defendants identified themselves as police officers or threatened Plaintiff with traditional arrest. The police were never even actually involved in the incident. The authority to wield a weapon under PA330 does not confer state action upon a private security guard who does not in fact wield a weapon. According to *Inman, supra,* the mere fact that the individual defendants were certified under PA330 is not sufficient to confer state action status. In sum, none of the individual Defendants acted under color of law in detaining Plaintiff for admittedly violating the gaming regulation. As Defendants were not acting under color of law, Plaintiff cannot sustain her claim under 42 U.S.C. §1983 and Defendants are entitled to summary judgment of Count V of her complaint.

II.    **Even if the individual Defendants' acted under color of state law, Plaintiff's §1983 claim must be dismissed as Defendants had reasonable cause for detaining Plaintiff.**

In Count V of her complaint, Plaintiff alleges that Defendants violated her Fourth Amendment rights to be free from an unreasonable seizure of her person. A person who has been the victim of an unlawful arrest or wrongful seizure has a claim under the Fourth Amendment. An arrest need not entail a physical restraint. An arrest can occur when the plaintiff is required to submit to an officer's show of authority. *Gardenhire v. Schubert*, 205 F.3d 303, 313 (6th Cir. 2000). To comply with the Fourth Amendment, an arrest must be supported by probable cause. *Dunaway v. New York*, 442 U.S. 200, 207-209, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Probable cause obviates the constitutional violation, even if the suspected offense is a very minor criminal infraction. *Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). An officer has probable cause to effect an arrest when he or she is in possession of facts sufficient to warrant a prudent person in believing that the plaintiff committed an offense. *Id.* at 315. See also *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1011-12 (6th Cir. 1999). Probable cause is determined under an objective, rather than subjective, standard. *Arkansas v. Sullivan*, 532 U.S. 769, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001).

The deposition testimony in this case clearly evidences that the individual Defendant officers had probable cause to detain Plaintiff in the manner in which they did and therefore did not violate Plaintiff's rights under the Fourth Amendment. Plaintiff admitted to taking the token out of a tray of a slot machine which she was not playing and then attempt to play it in another machine. **Exhibit A**, pages 11-12, 14. Such conduct is a felony prohibited under 432.218 Sec. 18(2)(j) of the Michigan Gaming Control and Revenue Act. Defendant Marlene Brown's testimony that she observed

Plaintiff do this is undisputed.  Whether Plaintiff's conduct in taking a token which did not belong to her constituted a misdemeanor or a felony, the individual Defendants had the authority to detain Plaintiff.  As Defendants had probable cause to detain her for admittedly violating the gaming regulation, Plaintiff's claim under 42 U.S.C. §1983 must fail.

<u>Conclusion</u>

For the reasons stated above, Defendants are entitled to summary judgment of Plaintiff's second amended complaint, in its entirety.

Respectfully submitted,

**GARAN LUCOW MILLER, P.C.**
Attorney for Defendant

By:
John B. Farrell (P27627)
Robert F. MacAlpine (P31626)
1000 Woodbridge Street
Detroit, MI  48207-3192
(313) 446-1530

Dated:   March 6, 2003

25

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED