IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**STELLA ROMANSKI,**

    Plaintiff,

-vs-

Case No. 02-CV-73358-DT-DT

Hon. Lawrence P. Zatkoff
Magistrate Steven D. Pepe

**DETROIT ENTERTAINMENT, L.L.C.,** d/b/a MotorCity Casino, a Michigan Limited Liability Company, **MARLENE BROWN, GLORIA BROWN, ROBERT EDWARDS** and **JOEETA STEVENSON,** Jointly and Severally,

    Defendants.



_____/

Robert F. MacAlpine (P 31626)
GARAN LUCOW MILLER, P.C.
1000 Woodbridge Street
Detroit, MI 48207-3192
(313) 446-1530
Attorney for Defendants

Neil H. Fink (P 13430)
S. David McNeill (P 17544)
Attorneys for Plaintiff

_____/

## DEFENDANT'S TRIAL BRIEF

NOW COMES Defendant, Detroit Entertainment, L.L.C., by and through its counsel, GARAN LUCOW MILLER, P.C., and for its Trial Brief, states as follows:

### FACTUAL BACKGROUND

In August 2001, Plaintiff, Stella Romanski, along with three friends, purchased a buffet lunch and bus ride to and from the MotorCity Casino from a tour company. While walking around a slot area of MotorCity Casino, Plaintiff took a nickel token from the slot

tray of a slot machine which she was not playing. Plaintiff admits picking up the token out of the tray and attempting to play it in another slot machine.

Marlene Brown, an undercover security officer employed by Defendant Detroit Entertainment, L.L.C., witnessed Plaintiff take the token from the tray and attempt to play it in another machine. Ms. Brown approached Plaintiff and tried to explain to Plaintiff that her conduct was prohibited by the casino. Plaintiff began to argue with Ms. Brown. Ms. Brown called two other undercover security officers, Gloria Brown and Robert Edwards, to assist her. Plaintiff continued to maintain that she could use the token she found in the slot machine tray. Ms. Brown explained to Plaintiff that taking a token from a machine violated casino policy.

Realizing that Plaintiff was escalating the situation into a verbal altercation, the officers asked Plaintiff to accompany them to the security office to further discuss and explain the casino's policy with their supervisor. Ms. Brown testified that she wanted to avoid a scene on the floor of the casino and that Plaintiff's conduct had the potential to become disruptive to other casino patrons. There is no dispute that, while escorting Plaintiff to the security office, none of the officers touched or handcuffed Plaintiff. Upon arriving at the security office, Defendant Joetta Stevenson, a security supervisor for the casino, also attempted to explain to Plaintiff that her conduct in taking the token from the slot tray was prohibited.

At no time was Plaintiff searched, patted down, handcuffed or placed in a detention cell. Plaintiff remained upset and uncooperative and ultimately, Ms. Stevenson made the decision to "86" or ban Plaintiff from the casino for a period of six months in light of her conduct. Ms. Stevenson requested Plaintiff to produce her driver's license and player's advantage card. A copy was made of Plaintiff's driver's license and her photo was taken.

2

Plaintiff's player's advantage card was confiscated as a part of the "86" procedure.

Defendants escorted Plaintiff to the air conditioned valet lobby, located on the first floor of the casino, where she could wait for her friends. Of her own volition, Plaintiff left the lobby and went outside to look and/or wait for her bus. Plaintiff remained outside the casino of her own volition. Eventually, Plaintiff's companions learned of Plaintiff's eviction and joined her outside of the casino. At some point shortly thereafter, Plaintiff and her friends encountered the individual Defendants again and entered into a heated discussion regarding Plaintiff's eviction. Ms. Brown and Ms. Stevenson testified that Plaintiff's companions called Ms. Brown "stupid".

Plaintiff originally brought suit against MotorCity Casino, Jane Doe and Mary Roe in Wayne County Circuit Court on November 9, 2001, alleging false arrest and imprisonment, defamation, intentional infliction of emotional distress and exemplary damages. On November 29, 2001, Plaintiff amended her complaint to correctly identify the defendant as Detroit Entertainment, L.L.C., d/b/a MotorCity Casino. On July 11, 2002, Plaintiff filed her second amended complaint, naming Marlene Brown, Joetta Stevenson, Gloria Brown and Robert Edwards, and adding a claim under 42 U.S.C. §1983. Defendant removed the action to this court.

<b><u>LEGAL ARGUMENTS</u></b>

**ABANDONED PROPERTY**

In its written opinion, this Court presumed that the token which Plaintiff found was in the tray of a slot machine, was won by another patron, however, that other patron walked away without collecting the token at issue, in short, the Court assumed that the token was abandoned. In truth and in fact, no evidence has been proffered with respect to the length of time the nickel token was in the slot tray or how it came to be there.

3

While the casino's premises are open to the general public, the entirety of the premises is heavily monitored and traversed by casino personnel. Video surveillance, slot attendants, dealers, pit managers, cocktail servers, security personnel and other casino employees are constantly monitoring the premises. It can hardly be said that a particular area or gaming device on casino premises has been abandoned.

The law is hesitant to find an abandonment and abandonment must be proven by clear and convincing evidence. Abandonment should not be inferred where there has been no realistic opportunity to discover and salvage the property. See *Fairport Intern Exploration Inc v Shipwrecked Vessel*, 913 F Supp 552 (1995), affirmed 105 F3d 1078, 1997 Fed App 38P, rehearing denied, certiorari granted, vacated 118 S Ct 1558, 523 US 1091, 140 L Ed 2d 790, on remand 177 F3d 491, 1999 Fed App 171P, rehearing denied, on remand 72 FSupp 2d 795, 163 ALR Fed 687, affirmed 245 F3d 857, certiorari denied 122 S Ct 544, 151 L Ed 2d 422, remanded 177 F3d 491, 1999 Fed App 171P, rehearing denied, and rehearing denied, on remand 72 Fsupp 2d 795, 163 ALR Fed 687, affirmed 245 F3d 857, certiorari denied 122 S Ct 544, 151 L Ed 2d 422.

Two requirements must be met in order to establish abandonment: first, it must be shown that there is an intent to relinquish the property, and second, there must be external acts that put that intention into effect. Non-use alone is insufficient to prove abandonment of property. See *Sparling Plastic Industries Inc v Sparling*, 583 NW2d 232, 229 Mich App 704 (1998).

This Court has held that under Michigan law that Plaintiff, as the finder of abandoned property, has a superior claim to said property than does the owner of the locus in quo, the casino. In support of this contention the Court relies upon *People v*

4

*Twenty-Seven Thousand Four Hundred Ninety Dollars*, 1996 WL 33348190. As mentioned, this presumes that the property was abandoned.

The *People* case can be distinguished on the facts as the property, namely abandoned money left in a condominium complex by a known drug dealer several years prior to its discovery, was known to be abandoned when it was discovered. In the matter under review, the duration and origin of the nickel token is unknown. It has not been shown by clear and convincing evidence that the nickel token was abandoned. The intent of the possessor of the property has not been shown nor has an external act relinquishing possession of the nickel token.

**42 USC § 1983**

In its written opinion, this Court states that Defendants exercised police-like authority and arrested Plaintiff, thereby conducting themselves as state actors. A question of fact exists with respect to whether or not Plaintiff was arrested.

In order for Plaintiff to sustain her claim under 42 USC §1983, Plaintiff must show that the Defendant arrested, not merely seized, Plaintiff pursuant to authority granted by Michigan law, the Defendant's arrest of Plaintiff caused the deprivation of her constitutional rights and the deprivation of Plaintiff's constitutional rights occurred without due process of law. See *Spears v Louisville*, (June 14, 1994 WL 262054 CA 6th); and *Jones v Sherrill*, 827 F2d 1102 (CA 6th 1987).

Security officer Marlene Brown initially approached Plaintiff in order to advise Plaintiff of the casino's policy regarding the taking of tokens from a slot machine's tray. It became clear that Plaintiff would not cease her rude and argumentative behavior. Ms. Brown called for additional officers. Plaintiff was escorted without incident to the security office in order to calm her down and to allow Ms. Brown's supervisor to explain to her the

policy prohibiting Plaintiff's conduct. Plaintiff's 86 was ultimately processed in the privacy of the security office as opposed to the casino floor. She was detained for only the time period necessary to complete her 86. Plaintiff was never handcuffed nor placed in a detention cell. In truth and in fact, Plaintiff was never arrested. Plaintiff was free to leave at any time. Ironically, Plaintiff is suing the casino for her detention during the period in which she was being ejected from the casino.

In *Kaupp v Texas*, 123 S Ct 1843 (2003) the Supreme Court held that an individual is merely **seized** by the Defendant if it is determined that, after taking into account all of the circumstances surrounding the encounter, the Defendant's conduct would have communicated to Plaintiff that she was not at liberty to ignore the Defendant's presence and go on about her business. It is clear from the evidentiary record generated thus far that Plaintiff likely felt that she was not at liberty to ignore the security officer's presence and continue on about her business.

A mere seizure differs greatly from a traditional arrest. In *Terry v Ohio*, 392 US 1, 88 S Ct 1868, 20 L.Ed. 2d 889 (1968), the Supreme Court provided that an individual is arrested by a Defendant if it is determined that Plaintiff's eventual seizure eventuated into a trip to a police station, booking and prosecution for a crime. Defendant is entitled to briefly stop and detain Plaintiff for investigative purposes without probable cause as long as the Defendant has a reasonable suspicion supported by articulable facts that criminal activity is afoot. The detention must be reasonably related in scope and duration to the circumstances which justified the interference in the first place. *Terry v Ohio*, 392 US 1, 88 Sct 1868, 20 L Ed 2d 889 (1968). Defendant also has the right to stop and reasonably inform patrons of its policies concerning conduct on this private place of business.

6

Plaintiff was at best temporarily detained and certainly never arrested by casino security personnel.

**FALSE ARREST/FALSE IMPRISONMENT**

In Count I of her second amended complaint, Plaintiff alleges that she was "wrongfully accused by the Defendants of stealing casino property" and that she was detained, interrogated, accused of being a criminal, stripped of her property, escorted out of the casino and forced to wait in hot weather for several hours. These allegations form the basis of her claim for false arrest and imprisonment.

A false arrest is an illegal or unjustified arrest. *Lewis v. Farmer Jack Division, Inc.*, 415 Mich. 212, 218, 327 N.W.2d 893 (1982). The innocence of the person arrested is not an element of the tort of false arrest. *Id.* An action for false arrest cannot be maintained where the arrest is legal, even if the person arrested is in fact innocent. If the arrest is legal, there has not been a false arrest. *Id.* To succeed on the claim of false imprisonment, Plaintiff must establish that (1) Defendants intended to confine her; (2) she was actually confined as either a direct or indirect result of Defendants' actions; and (3) she was actually conscious or aware of her confinement. *Moore v. City of Detroit*, 252 Mich App 384, 387, 652 N.W.2d 688 (2002). "'[The essence of a claim of false imprisonment is that the imprisonment is false, *i.e.*, without right or authority to do so.'" *Id.* at 388, quoting *Hess v. Wolverine Lake*, 32 Mich.App. 601, 604, 189 N.W.2d 42 (1971). Claims of false arrest or imprisonment require the plaintiff to prove that the arrest lacked probable cause. *Burns v. Olde Discount Corp.* 212 Mich.App. 576, 581, 538 N.W.2d 686 (1995). Where the facts are undisputed, the determination whether probable cause exists is a question of law for the court to decide. *Hall v. Pizza Hut of America, Inc.*, 153 Mich.App. 609, 615, 396 N.W.2d 809 (1986). Probable cause that a particular person has committed a crime

7

is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person to believe that the accused is guilty of the offense. *People v. Coutu*, 235 Mich.App. 695, 708, 599 N.W.2d 556 (1999).

Where a private security officer has been certified under the Private Security Guard Act of 1968, PA330, M.C.L. 338.1051 *et. seq.*, that security officer has the authority to make arrests of a person without warrant on the premises of her employer. The Act also requires the private security officer to be in full uniform of the employer. Under certain circumstances, a private security officer is akin to a peace officer. *Op Atty Gen* 1977, No. 5126, p 105. Pursuant to M.C.L. §764.15, a peace officer, without a warrant, may arrest a person, if a misdemeanor or ordinance violation has been committed in his/her presence, or if the peace officer has reasonable cause to believe a misdemeanor has been committed, and has reasonable cause to believe the person to be arrested has committed it.

In the present case, the facts clearly show that Plaintiff was gaming at Defendant's Casino, and that she admittedly took a token from a slot machine which she was not playing and attempted to play it in another machine:

> Q: When you walked around the post – – let me get to the heart of it. Ma'am, did you or did you not pick up a nickel from one of the slot machine trays?
> A: No, I didn't. I picked up a coin.
> Q: What was the coin?
> A: Nickel coin. It was laying in the tray. I didn't remember at the time, but the more I thought about it, I picked up a nickel coin in a tray.
> Q: What did you do with it?
> A: I went around to the machine that I was playing right along and I put $20 in and the nickel coin.
>
> \*\*\*
>
> Q: It's my understanding just to clarify that today you acknowledge that you probably did pick up the coin and play it, is that correct?
> A: Uh-huh. Yes. Sorry.

8

This conduct constitutes a violation of casino policy. Accordingly, Defendant's security officers clearly had probable cause to detain the Plaintiff. Plaintiff's actions, which were all readily witnessed by security personnel, certainly presented casino security with circumstances sufficiently strong in themselves to warrant a cautious person to believe Plaintiff had violated the policy. As Defendants had the legal authority to detain Plaintiff and also had probable cause to do so, given that she admittedly violated casino policy, Defendants cannot be liable for false arrest or false imprisonment.

**DEFAMATION**

In Count II of her second amended complaint, Plaintiff alleges that Defendants are liable in defamation for having "made false, malicious and defamatory accusations about Plaintiff, accusing her of committing a crime, to wit stealing Defendant's property." Plaintiff claims to have suffered injury to her reputation and public disgrace as a result.

To sustain a claim of defamation, the following must be proven: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication of the statement to a third party; (3) a minimum of negligence on the part of the defendant publisher; and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the defendant publisher. *Linebaugh v. Sheraton Michigan Corp.*, 198 Mich.App 335, 338, 497 N.W.2d 585 (1993).

As this Court acknowledged in its published opinion, Plaintiff published the details of the incident by contacting her companions via a pay phone and advising them of her version of the facts and circumstances surrounding the matter. Plaintiff's deposition testimony confirms that it was she that relayed the information to her companions.

> A: When I was sitting in the valet parking, there was a phone on the wall and I'm waiting for my bus, so I went over and I made a phone call. There was a guard that

> was walking back and forth in the valet parking, and he was watching me. And I called my friends in the casino and I told them that they were kicking me out and they didn't believe me. I says I'll meet you at my car. I said didn't someone come and tell you that they were kicking me out? She said no, nobody told me. So anyhow, I hung up and I went back and I sat down. Then my bus came at 3:00 o'clock. I don't know if I was escorted, but I did that again, crossed valet parking, went around that wall and crossed Grand River. That wasn't my bus, it left. And I didn't come back to the casino to the valet, because I didn't – I didn't think they would let me in. It was a very hot day and I'm sitting there and I'm waiting and all of a sudden my friends popped out and they said – I said how did you find me? And they said well, they called security and security couldn't tell them other than somebody told them I was in big trouble, but they told them they knew where I was, so they came out. They were – I was telling them what happened and while I was telling them what had happened, all of a sudden the people that guarded me were outside and the guard that was watching me told them that my friends were out there, because how would they know, there was no call, no nothing. **(pp 20-21, transcript of Plaintiff's March 14, 2002 deposition)**

In acknowledging Michigan's general rule against self publication, the Michigan Court of Appeals in the unpublished decision, *Robertson v Conant*, 1996 WL 33359078, 25 Media L Rep 1354, Mich App Sept 17, 1996, cited a well established Michigan Supreme Court case which provide that a plaintiff cannot recover when she communicates the defamatory statement to a third party. *Konkle v Haven*, 140 Mich 472, 476; 103 NW 850 (1905); *Shinglemeyer v Wright*, 124 Mich 230, 240; 82 NW 887 (1900); See also Restatement Torts, Second, § 577, comment m. Defendant cannot be held liable for defamation when it is the Plaintiff that publishes the alleged defamatory/slanderous comments.

Furthermore, Defendant anticipates that Plaintiff will allege that casino employees defamed her by advising her friends of her conduct. In reality, Plaintiff's companions made

10

inquiry to casino personnel regarding the incident while Plaintiff was present. Casino security responded with a description of Plaintiff's conduct. Defendant possesses a qualified privilege to respond to questions regarding the conduct of a patron. Plaintiff was obliged to respond to Plaintiff's companion's queries in good faith while Plaintiff was present. Security personnel relayed a statement to Plaintiff's companions which was limited in scope to educating them of the incident which forms the basis of Plaintiff's complaint. The existence of Defendant's privilege prohibits Plaintiff from succeeding on her claim for defamation.

Plaintiff has failed to prove malice on the part of Defendants sufficient to defeat the privilege. In *Prysak v. R.L. Polk Co.*, 193 Mich.App. 1, 483 N.W.2d 629 (1992), the Michigan Court of Appeals outlined the elements of a qualified privilege:

> The determination of whether a privilege exists is one of law for the court. The elements of a qualified privilege are (1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only. A plaintiff may overcome a qualified privilege only by showing that the statement was made with actual malice, i.e., with knowledge of its falsity or reckless disregard for its truth. General allegations of malice are insufficient to establish a genuine issue of material fact.

*Id.* at 14-15 (citations omitted). To prove actual malice, sufficient to overcome the qualified privilege, Plaintiff must prove, by clear and convincing evidence, that Defendants possessed actual knowledge that the published statement was false or that Defendants, in fact, entertained serious doubts as to the truth of the statement. *Ireland v. Edwards*, 230 Mich.App 607, 622, 584 N.W.2d 632 (1998), citing *Grebner v. Runyon*, 132 Mich.App 327, 347 N.W.2d 741 (1984). Plaintiff has not plead, nor can she prove, that Defendants acted with actual malice.

Finally, Plaintiff has marketed her story to various media outlets including the Detroit Free Press, Detroit News and Playboy. Defendants cannot be held liable under a theory of compelled self-defamation as they clearly did not compel Plaintiff to release to the media the details of the August 7, 2000 incident. See, *Grist v. Upjohn Co.*, 16 Mich. App 452, 168 N.W.2d 389 (1969).

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff's third claim alleges that Defendants' actions in detaining and eventually banning her was extreme and outrageous and caused Plaintiff to suffer embarrassment, humiliation, fear and emotional distress. To establish a valid claim of intentional infliction of emotional distress, Plaintiff must prove: (a) extreme and outrageous conduct; (b) intent or recklessness; (c) causation; and (d) severe emotional distress. *Graham v. Ford*, 237 Mich.App. 670; 604 N.W.2d 713 (1999). Liability for this claim requires that the conduct be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society. *Doe v. Mills*, 212 Mich.App. 73; 536 N.W.2d 824 (1995). Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Id*. Hence, a plaintiff will only be able to recover for intentional infliction of emotional distress "in the most egregious of cases." *Bonelli v. Volkswagen of America, Inc.*, 166 Mich.App. 483; 421 N.W.2d 213 (1988).

Assuming intentional infliction of emotional distress is a viable cause of action in Michigan, the test for determining whether conduct is sufficiently unreasonable as to be regarded as extreme and outrageous is whether a recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" *Graham, supra*. "The severity of emotional distress may be

evidenced by fright, horror, grief, shame, worry and nausea, but the law will intervene only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Haverbush, supra* at 235.

For example, in *Haverbush v Powelson*, 217 Mich App 228 (1996), the court found that the defendant's conduct, in leaving lingerie on the plaintiff-doctor's vehicle, leaving same at his residence, sending correspondence wherein she asked how his fiancee might like an ax through her head, and then leaving an ax on the plaintiff-doctor's car windshield, sending threatening and harassing letters to the plaintiff-doctor, his family, and his future in laws, and making other various threats regarding the plaintiff-doctor's future marriage, his job, and his reputation, all over a three (3) year period, was so extreme and outrageous as to have caused the plaintiff-doctor severe emotional distress. *Id.*

In *Smith v Calvary Christian Church*, 233 Mich App 96 (1998), the court held that the plaintiff's allegations that after he confessed to his church's pastor that he had previously engaged in marital infidelity with prostitutes, that the pastor then conveyed this information to their entire congregation, including to plaintiff's wife, family and friends, were sufficient to state a claim for intentional infliction of emotional distress.

Plaintiff's claim must fail as she cannot prove the requisite elements of this cause of action. Defendant's legally authorized conduct in briefly detaining Plaintiff and banning her from the casino was not outrageous, extreme nor atrocious so as to impose tort liability on Defendant. See *Bellamy v. Target Stores*, unpublished per curiam opinion of the Court of Appeals (No. 235334, November 19, 2002).

While Plaintiff is not required to have sought medical treatment as a result of Defendant's alleged conduct, she must offer evidence of more than mere indignity, embarrassment or humiliation. *McCahill v. Commercial Union Ins. Co.*, 179 Mich.App. 761,

13

446 N.W.2d 579 (1989). Plaintiff admits that she has not sought medical treatment for any condition as a result of the incident nor has she taken any kind of medication as a result of the incident. Plaintiff's deposition testimony evidences only that she was merely embarrassed as a result of her detention and expulsion by Defendants.

In allowing Plaintiff's claim for intentional infliction of emotional distress to survive Defendant's Motion for Summary Disposition, this Court held:

> There is sufficient evidence to allow a jury to find that after Plaintiff picked up an abandoned token that Defendants--by using the authority vested in them by the State of Michigan--surrounded her, arrested her, led her to the security office, prevented her from leaving the security office, and stole the five cents that she found from her. Afterwards, they surrounded her as they threw her out of the casino, and refused to let her use the restroom by herself. Defendants also prevented her from having lunch with her friends, falsely told her friends that she had stolen from them, and would not let her enter the casino to get out of the heat. Viewing these facts in the light most favorable to Plaintiff, a jury could certainly exclaim 'Outrageous!'

The terminology utilized by the Court in the above portion of its opinion more than views the facts in a light most favorable to the Plaintiff. In truth and in fact, the reality of the facts and circumstances of the incident would not support Plaintiff's claim. Plaintiff was escorted to the security office, Plaintiff never requested to be released and was in fact being asked to remove herself from the casino's premises. The nickel was not the Plaintiff's to retain. Plaintiff's own conduct prevented her from having lunch with her friends, Plaintiff was not physically thrown out of the casino as the Court implies, Defendants merely responded to questions put to them by Plaintiff's companions regarding the situation after Plaintiff told her friends what had happened. Plaintiff remained in the heat outside the casino of her own will. In viewing the realistic facts of the matter it is clear that

14

Plaintiff's claim does not meet the stringent criteria of the Michigan judiciary as set forth in *Haverbush* and *Smith*.

                                          Respectfully submitted,

                                          **GARAN LUCOW MILLER, P.C.**
                                          Attorney for Defendants

                            By:   */s/ Robert F. MacAlpine*
                                          Robert F. MacAlpine (P31626)
                                          1000 Woodbridge Street
                                          Detroit, MI  48207-3192
                                          (313) 446-1530

Dated:   July 9, 2003